**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**----------------------------------------------------------x**
**In re:**

        **29 Brooklyn Avenue , LLC**

                       **Debtor.**
**---------------------------------------------------------x**

        **Chapter 11**

        **Case No. 12-40279-NHL**

**DISCLOSURE STATEMENT PERTAINING TO CHAPTER 11 PLAN <u>OF REORGANIZATION OF THE DEBTOR PROPOSED BY THE DEBTOR</u>**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

        **THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST**

        **THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE DEBTOR'S CHAPTER 11 PLAN.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE CHAPTER 11 PLAN ANNEXED TO THE DISCLOSURE STATEMENT AS EXHIBIT A.**

        **COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

David Carlebach, Esq.
LAW OFFICES OF DAVID CARLEBACH, ESQ.
Counsel to the Debtor
40 Exchange Place
New York, New York 10005
Tel:  (212) 785-3041
Fax: (646) 355-1916
Email: <u>david@carlebachlaw.com</u>

## I. INTRODUCTION

29 Brooklyn Avenue, LLC (the "Debtor"), hereby submits this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of its Plan under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit "A". All Creditors are urged to carefully review the Plan and Disclosure Statement. All capitalized terms used but not defined herein shall have the meaning set forth in the Plan[1]. Also, all exhibits to this Disclosure Statement are incorporated into and are part of this Disclosure Statement as if set forth in full herein.

This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors, holders of Interests in the Debtor and other parties-in-interest. To the extent a Creditor has any questions, please contact counsel to the Debtor (whose address and telephone number are listed on the cover of this Disclosure Statement) for assistance.

**THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE Plan. THE GOAL OF THE DEBTOR IS FOR ALL CREDITORS TO ACCEPT THE Plan. THE DEBTOR IS THE**

---

[1] Unless the context otherwise requires, any capitalized term used herein and not defined in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto" and "hereunder," and other words of similar import, refer to this Disclosure Statement as a whole and not to any particular portion hereof. The word "including" shall mean "including, without limitation."

**PROPONENT OF THE Plan AND STRONGLY RECOMMENDS THAT PARTIES ENTITLED TO VOTE THEREON VOTE TO ACCEPT THE Plan.**

On or about _____, 2012, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.

Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure Statement.

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE Plan ARE AUTHORIZED BY THE DEBTOR, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON, IN ARRIVING AT A DECISION WITH RESPECT TO THE Plan.**

**THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN BASED UPON INFORMATION SUPPLIED BY THE DEBTOR. AS INDICATED HEREIN, THE FINANCIAL INFORMATION WITH RESPECT TO ASSETS AND LIABILITIES ARE ESTIMATES BASED UPON THE AVAILABLE INFORMATION. THE DEBTOR, HOWEVER, CANNOT REPRESENT THAT FUTURE EVENTS MAY NOT REQUIRE CHANGES TO THE INFORMATION CONTAINED HEREIN.**

After reviewing this Disclosure Statement, please indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor so that it is received on or before _____, 2012.

**ANY BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER _____, 2012 WILL NOT BE COUNTED.**

Accompanying this Disclosure Statement are the following enclosures:

**A.     Order Approving Disclosure Statement and Establishing Confirmation Procedures.**

A copy of the order of the Bankruptcy Court dated on or about _____, 2012, approving the Disclosure Statement and, among other things, establishing procedures for voting on the Plan, and scheduling the hearing to consider, and the deadline for objecting to, confirmation of the Plan (the "Disclosure Statement Order");

**B.     Notice of Confirmation Hearing.**

A copy of the notice of the deadline for submitting ballots to accept or reject the Plan and, among other things, the date, time and place of the Confirmation Hearing and the deadline for filing any objections to confirmation of the Plan (the "Notice of Confirmation Hearing");

**C.     Ballots.**

One or more ballots for you to vote to accept or reject the Plan, unless (a) your Claim is not impaired under the Plan and you are, therefore, deemed to accept the Plan or (b) you are to receive no distribution under the Plan. In either case, you are not entitled to vote with respect to the Plan. See the discussion below for an explanation of which parties in interest are entitled to vote on the Plan.

**II.     PROCESS OF VOTING AND CONFIRMATION**

A Chapter 11 Plan of reorganization or liquidation specifies the manner in which the claims of creditors against, and the interests of equity security holders in, a debtor are satisfied. Whether a plan will be approved by the Bankruptcy Court and implemented depends on the acceptance by creditors and equity security holders and satisfaction of the Bankruptcy Code's requirements for Court approval (referred to as "Confirmation") of the plan. The Bankruptcy Code

provides that only creditors whose claims are impaired and holders whose interests are "impaired," i.e., whose rights are to be affected, as that term is defined in § 1124 of the Bankruptcy Code, are entitled to vote on a plan. Creditors and equity security holders whose claims and interests are not impaired under a plan are deemed to have accepted such plan.

Each Unsecured Creditor has received a ballot with this Disclosure Statement. Ballots, which will only be sent to Creditors holding impaired Claims, must be returned to the Law Offices of David Carlebach, Esq., 40 Exchange Place, New York, New York 10005, <u>so that they are received on or before 5:00 p.m. (New York City time) on_____</u>, 2012, which the Bankruptcy Court has fixed as the last date by which Plan ballots may be submitted. The Bankruptcy Court has scheduled the Confirmation Hearing for _____ \_\_, 2012, at \_\_:00 a.m./p.m. or as soon thereafter as counsel can be heard. As a Creditor, your vote on the Plan is, therefore, very important.

In order for the Plan to be deemed accepted and thereafter confirmed, at least two-thirds (2/3) in amount and more than one-half (½) in number of Allowed Claims of Class Unsecured Creditors who vote must cast their votes to accept the Plan. The definition of the term "impairment" is set forth in § 1124 of the Bankruptcy Code and includes those classes whose legal, equitable or contractual rights are altered by a plan.

If confirmed, the Plan will become effective on the first business day that is at least Fourteen (14) days after the Confirmation Date (<u>i.e.</u>, the date the Court enters an order confirming the Plan) ("Effective Date"), provided, among other things, that the Confirmation Order is not stayed or the subject of an appeal or motion for reconsideration.

## II.   DISCLAIMERS AND ENDORSEMENTS

This Disclosure Statement contains information supplementary to the Plan and is not intended to take the place of the Plan itself. All of the financial information contained in this Disclosure Statement has been provided by the Debtor and has not been subject to a certified audit. This Disclosure Statement is accurate to the best of the knowledge, information and belief of the Debtor based on information supplied by the Debtor. Each Unsecured Creditor and holder of an Interest is advised to study the Plan carefully to determine the Plan's impact on its Claims or Interests, as the case may be. The Debtor has endeavored to make this Disclosure Statement as clear and accurate as possible.

**PLEASE READ THIS DISCLOSURE STATEMENT, INCLUDING THE Plan, IN ITS ENTIRETY. A COPY OF THE Plan IS ANNEXED HERETO AS EXHIBIT A. THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE Plan FOR THE CONVENIENCE OF CREDITORS AND EQUITY INTEREST HOLDERS, BUT THE Plan ITSELF QUALIFIES ALL SUCH SUMMARIES. ACCORDINGLY, IF ANY INCONSISTENCY EXISTS BETWEEN THE Plan AND THE DISCLOSURE STATEMENT, THE TERMS OF THE Plan SHALL CONTROL.**

## III.   GENERAL INFORMATION REGARDING THE DEBTOR

### A.   Background of Debtor's Business

The Debtor is primarily in the business of ownership of real estate, specifically the residential apartment building located at 3706 Flatlands Avenue, Brooklyn, New York 11234 (the "Property"). The Debtor's Managing Member is Yisorel Barron.

## IV.   THE DEBTOR'S CHAPTER 11 CASE

### A.   The Filing of the Petition

On January 18, 2012, (the "Petition Date") the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and thereupon continued in the management and operation of its business and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On February 20, 2012, the Debtor filed a Retention Application to retain the Law Offices of David Carlebach as counsel for the Debtor, *nunc pro tunc,* as of January 18, 2012 (the "Application"). On February 22, 2012 an Order was filed approving the Application.

On February 20, 2012, the Debtor filed a Retention Application to retain the office of EisnerAmper, LLP as Accountants and Financial Advisors for the Debtor, *nunc pro tunc,* as of January 18, 2012 (the "EisnerAmper Application"). On February 22, 2012 an Order was filed approving the EisnerAmper Application.

On March 14, 2012, the Debtor obtained a Bar Order, setting April 25, 2012 as the date by which all creditors must file proofs of claim (governmental entities must file a proof of claim by July 25, 2012).

On April 23, 2012, the Debtor filed it's Monthly Operating Report for the Period of January 2012.

On April 23, 2012, the Debtor filed it's Monthly Operating Report for the Period fo February 2012.

On April 23, 2012, the Debtor filed it's Monthly Operating Report for the Period of March 2012.

On May 30, 2012, the Debtor filed Objection to the Claim of Stephen Chesley, Receiver (Claim 3) Pursuant to 11 U.S.C. Section 502(b), and Bankruptcy Rule 3001 and 3007.

On June 1, 2012, the Debtor filed an Amended Motion to Object/Reclassify/Reduce/Expunge Claims: Claim Number(s) 3.

**B.    The Schedules, Valuation and The Plan**

The Debtor filed Schedules of Assets and Liabilities (the "Schedules") including Schedule A, which valued the Property at $1,700,00.00, and Schedule D which listed the claim of Northfield Bank at $1,292,742.00.

## THE PLAN OF REORGANIZATION

With this Disclosure Statement, the Debtor is filing, with the Bankruptcy Court, a proposed plan of reorganization (the "Plan") which plan is annexed hereto as Exhibit A. Under the Plan, the Debtor will pay all allowed creditor claims in full in cash on confirmation through a contribution by the Debtor's principal which funds are already in a Section 345 Confirmation Escrow Account with counsel  (Exhibit B).  A Copy of the Debtor;s Balance Sheet and statement of operations are annexed here to as Exhibit C.

**A.    SUMMARY OF THE PLAN**

> **THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES.  CREDITORS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL, IF NECESSARY, IN ORDER TO FULLY UNDERSTAND THE PLAN AND ITS IMPACT ON EACH PARTY.  THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT WITH THE DEBTOR, AND AN INTELLIGENT JUDGMENT CONCERNING THE PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.**

The Plan provides for payment of claims based upon the priorities contained in the

Bankruptcy Code. This summary of the Plan, as well as the rest of this Disclosure Statement, contains terms which are defined in Article I of the Plan. Thus, Article I of the Plan should be referred to while reviewing this Disclosure Statement.

**B.**     **Classification of Claims and Interests**

### Class I

**Classification**:     Class I consists of the costs and expenses of administration of the Bankruptcy Case entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code, including the costs of curing any executory contracts and unexpired leases pursuant to §365 of the Code, post-petition taxes and professional fees. The Debtor estimates that total administration expenses will equal approximately $90,000.00 including the fees of the Receiver, Debtor's counsel and the Debtor's Accountants.

**Treatment:**   Class I Claims shall be paid by the Debtor up to the allowed amount of their claims. The professionals that the Debtor has sought to retain have been Debtor's counsel, Law Offices of David Carlebach, Esq. ("Carlebach"), and EisnerAmper, LLP accountants to the Debtor ("Eisner"). Carlebach has been paid a pre-petition retainer by the Debtor's Managing Member Yisroel Barron of $7,500.00. Carlebach expects that his fees will be approximately an additional $10,000.00 through confirmation. Eisner was not paid a pre-petition retainer. Eisner expects that its fees will be approximately $6,000.00 through confirmation. In connection with the filing of the Plan herein Debtor will owe approximately $500 in United States Trustee Fees through

confirmation. Class I is an unimpaired Class.

## Class II

**Classification**: Class II consists of the Secured Claim of Northfield Bank c/o Kenneth J. Duane,. P.C. in the amount of $1,289,755.98, pursuant to proof of claim filed on April 20, 2012 by Northfield Bank.

**Treatment:** Class II Claims shall be paid as follows: Class II claims will be continued to be paid in accordance with the terms of the mortgage which has never been in default. Class II is an unimpaired class.

## Class III

**Classification**: Class III consists of the Secured Claim of NYC Environmental Control Board c/o James Macron NYC ECB c/o Oath in the amount of $25.34, pursuant to a proof of claim was filed on April 19, 2012 by the NYC Environmental Control Board.

**Treatment:** Class II Claims shall be paid as follows: upon confirmation of the Liquidating Plan, and in accordance with Section 506(a) of the Bankruptcy Code, Class II claims will be paid the full amount of their claim as allowed. Class III is an unimpaired class.

## Class IV

**Classification**: Class IV consists of all allowed Unsecured Claims against the Debtor. These are listed in Schedule F of the Debtor's Schedules, which were filed with the Court on February 1, 2012. The total amount of the known non-insider Unsecured Claims against the Debtor is $68,830.00

**Treatment:** Class IV Claims shall be paid in full in cash on confirmation their allowed claims. Class III is an unimpaired class.

**Class V**

**Classification**: Class V consists of the Equity Interests in the Debtor. The Equity interests of the Debtor are 100% Yisroel Barron.

**Treatment:** Class V interest holders, shall retain their equity interests.

**C.    JURISDICTION.**

After Confirmation, the Court will retain jurisdiction to resolve, among other matters, issues relating to objections to Claims and specifically the Objection and related litgation to the claim of the receiver Stephen Chesley.

**D.    SATISFACTION OF CLAIMS AND INTERESTS & SETOFFS.**

The treatment of, and consideration, if any, to be received by, holders of Claims and Interests pursuant to the Plan shall be in full and final satisfaction, release and discharge of such Claims or Interests, as the case may be.

The Debtor may, but shall not be required to, set off against any Claim or the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor may have against the Creditor, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any such claims or rights that the Debtor may have against such Creditor.

A plan of reorganization does not discriminate unfairly within the meaning of the Code if no class receives more than it is legally entitled to receive for its Claims or equity interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

With respect to a Secured Claim, "fair and equitable" means either:

(a)    the impaired Secured Creditor retains its Liens to the extent of its

>> Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens;

> (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or

> (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

With respect to an Unsecured Claim, "fair and equitable" means either:

(a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or

(b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

In the event one or more classes of impaired Claims rejects the Plan, the Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

### E. **CONFIRMATION REQUIREMENTS AND PROCEDURES**.

To be confirmable, the Plan must meet the requirements listed in § 1129(a) or (b) of the Bankruptcy Code. The requirements include that the Plan must be proposed in good faith; at

least one impaired class of claims must accept the Plan without counting votes of insiders, or all classes of creditors are non-impaired whereby they will be deemed to have accepted the plan pursuant to 1129(a)(8)(b); the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129 of the Bankruptcy Code, and they are not the only requirements for confirmation.

      A.      **Who May Vote or Object**.

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that no classes are impaired and that holders of claims in each class are therefore not entitled to vote to accept or reject the Plan. Notwithstanding the above, the Debtor proposes to nevertheless send a ballot to the unimpaired creditor, although the Debtor as previously stated believes they have no right to vote.

1. *Allowed Claim or Allowed Equity Interest.*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

2. *Impaired Claim or Impaired Equity Interest.*

As noted above, the holder of an allowed claim or allowed equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote.*

The holders of the following five types of claims and equity interests are ***not*** entitled to vote:

A. Holders of claims and equity interests that have been disallowed by an order of the Court;
B. Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests", unless they have been "allowed" for voting purposes.
C. Holders of claims or equity interests in unimpaired classes;
D. Holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code;
E. Holders of claims or equity interests in classes that do not receive or retain any

                value under the Plan; and
F.        Administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

        4.        *Who Can Vote in More than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    B.        **Votes Necessary to Confirm the Plan**.

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

        1.        *Votes Necessary for a Class to Accept the Plan*.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

        2.        *Treatment of Non-accepting Classes*.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Bankruptcy Code. A Plan that binds non-accepting classes is commonly referred to as a "cram down" Plan.

The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation, except the voting requirements of § 1129(a)(8) of the Bankruptcy Code does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### F.  ALTERNATIVES TO THE Plan

The Debtor believes that the Plan provides Creditors with the best possible value that can be realized on their respective Claims. The principle alternatives to Confirmation of the Plan are: (I) confirmation of an alternative Plan submitted by the Debtor or by another party in interest or (ii) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

#### A.  **Alternative Chapter 11 Plan**.

If the Plan is not confirmed, the Debtor or a party in interest theoretically could attempt to formulate an alternative Chapter 11 Plan. The Debtor believes that, if the Plan is not confirmed, there is a substantial likelihood that any alternative Chapter 11 Plan proposed will impair Claims to a far greater degree than the Plan, and may provide for substantially smaller distributions to Creditors on account of General Unsecured Claims. Furthermore, any attempt to formulate an alternative Chapter 11 Plan would necessarily delay Creditors' receipt of any initial distributions to be made and further burden the Debtor's estate with administrative expenses that would further

dilute Creditor recoveries. Accordingly, the Debtor believes that the Plan clearly will enable all Creditors to realize the greatest possible recovery on their respective Claims with the least delay.

      B.    **<u>Liquidation Under Chapter 7</u>**.

If the Plan or any other Chapter 11 plan for the Debtor cannot be confirmed under section 1129(a) or (b) of the Bankruptcy Code, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to Liquidate the assets of the Debtor for distribution to Creditors pursuant to Chapter 7 of the Bankruptcy Code. In the event of a conversion of the Debtor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, an additional tier of administrative expenses entitled to priority under section 507(a)(2) of the Bankruptcy Code would be incurred. Such administrative expenses would include the Chapter 7 trustee's commissions and would include fees for the trustee's attorneys, accountants, or other professionals retained by the trustee. While creditors may eventually recover under a liquidation sale it would certainly take far longer and involve a sale process which can be avoided through the Debtor's plan.

      C.    **<u>Additional Risks</u>**.

In the event that the Plan is not confirmed or the Chapter 11 Case is converted to a case under Chapter 7 of the Bankruptcy Code, the Debtor believes that such inaction or action, as the case may be, will cause substantial expenses to be incurred by the Debtor and will otherwise serve only to unnecessarily prolong the Chapter 11 Case and otherwise negatively affect Creditors' recoveries on account of their Claims.

**G.    <u>TAX CONSEQUENCES</u>**

The Debtor has not researched the tax consequences of the Plan to holders of Claims

17

and Interests nor has it requested a ruling from federal, state or local taxing authorities with respect to these matters. There may be federal, state, local or foreign tax considerations applicable to each Creditor or holder of an Interest. EACH CREDITOR AND HOLDER OF AN INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE Plan AND APPLICABLE FEDERAL, STATE, LOCAL AND FOREIGN TAX LAWS. The Plan is not intended to result in the forfeiture or compromise of any of the Debtor's tax attributes, all of which are preserved to the extent allowed by applicable law.

## **CONCLUSION**

The acceptances of the holders of all Classes of impaired Claims are hereby solicited. The Debtor believes that Confirmation of the Plan is in the best interests of all Creditors. The Debtor has worked diligently and expeditiously to formulate a Plan that would afford Creditors substantially more than they would receive if the Chapter 11 Case were converted to a liquidation case under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan is in the best interests of Creditors and strongly urges all Creditors to vote for the Plan.

**THE DEBTOR SUBMITS THAT THE PLAN COMPLIES IN ALL RESPECTS WITH CHAPTER 11 OF THE BANKRUPTCY CODE, AND RECOMMENDS TO HOLDERS OF CLAIMS AND INTERESTS WHO ARE ENTITLED TO VOTE ON THE PLAN THAT THEY VOTE TO ACCEPT THE PLAN. THE DEBTOR REMINDS SUCH HOLDERS THAT EACH BALLOT, SIGNED AND MARKED TO INDICATE THE HOLDER'S VOTE, MUST BE RECEIVED BY NO LATER THAN 5:00 P.M.  E.S.T ON_____, 2012 AT THE FOLLOWING ADDRESS:**

Law Offices of David Carlebach, Esq.
40 Exchange Place
New York, New York 10005

DATED:      New York, New York
                    December 19, 2012

Respectfully submitted,
**LAW OFFICES OF DAVID CARLEBACH, ESQ.**
Counsel to the Debtor
40 Exchange Place
New York, New York 10005
(212) 785-3041
By:s/David Carlebach
   David Carlebach (DC-7350)

s/Yisroel Barron
Member of the Debtor