UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              Chapter 11

      29 Brooklyn Avenue, LLC,                    Case No. 12-40279-cec

                   Debtor.
------------------------------------------------------------x

OPINION

APPEARANCES:

David Carlebach, Esq.                    Michael Cohen, Esq.
The Carlebach Law Group                  Tenenbaum Berger & Shivers LLP
55 Broadway, Suite 1902                  26 Court Street, Penthouse
New York, New York 10006                 Brooklyn, New York 11242
*Counsel for the Debtor*                 *Counsel for Stephen R. Chesley, Receiver*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Stephen R. Chesley (the "Receiver") who operated property located at 29 Brooklyn Avenue, Brooklyn, New York (the "Property") belonging to 29 Brooklyn Avenue, LLC (the "Debtor") prior to the filing of this bankruptcy case, for attorney's fees under §§ 503(b)(3)(E) and 503(b)(4).[1] For the reasons stated below, the motion is granted in part and denied in part.

JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012, and Article 6 of the confirmed chapter 11 plan in this case. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B),(C), and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

BACKGROUND

For purposes of this decision, familiarity with the factual background is assumed. The relevant facts may be summarized as follows:[2]

On January 18, 2012 (the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Prior to the Filing Date, New York Community Bank initiated a foreclosure action with respect to the Property.[3] The Receiver, appointed in the foreclosure action, came into possession of the Property in October 2010, and managed the Property from that point up until the Filing Date. Yisroel Barron was the

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

[2] All facts are taken from the decision in In re 29 Brooklyn Ave., LLC, 535 B.R. 36 (Bankr. E.D.N.Y. 2015) (Decision, Case No. 12-40279, ECF Doc. No. 206) unless otherwise noted.

[3] At that time, the Property was owned by a different entity. It was subsequently transferred to the Debtor prior to the Filing Date.

1

principal of the Debtor and the owner of 100% of the equity interests. (Ch. 11 Plan ¶ 2.7, ECF Doc. No. 73).[4]

A.    The Plan

On December 19, 2012, the Debtor filed a chapter 11 plan, which did not provide for payment of the Receiver's outstanding expenses or commissions. On January 30, 2013, the Receiver filed an objection to confirmation of the plan. On February 6, 2013, the Receiver withdrew his objection to confirmation after the Debtor agreed to escrow funds sufficient to pay his claim. The plan was confirmed by order entered February 14, 2013. According to records filed by the Debtor, the Property was sold for $3,056,194.00, and after payment of sale expenses and secured creditors, the Debtor retained $1,367,454.00. (Ch. 11 Statement of Quarterly Disbursements Post Confirmation, ECF Doc. No. 172.) The unsecured claims against the Debtor were less than $70,000.00 (Ch. 11 Plan ¶ 2.5, ECF Doc. No. 73.) The Plan provided for 100% payment of all administrative expenses and all allowed claims.

B.    The Receiver's Claim

After the Filing Date, the Receiver turned over possession of the Property and filed a proof of claim in the amount of $80,757.22 (the "Proof of Claim"). The Proof of Claim represented pre-petition paid and unpaid expenses of the Property as well as the Receiver's commission and legal fees incurred up to that point. The Debtor filed an objection to the Proof of Claim on June 1, 2012 (the "Objection"). The Receiver filed his final accounting on March 15, 2013. Both before and after the final accounting was filed, the parties engaged in extensive discovery relating to the Proof of Claim and the Objection. After an eight-day trial, the Court allowed the Receiver's Proof of Claim in the amount of $72,449.35. The Receiver was surcharged $225.49 for a total award of

---

[4] All references to "ECF Doc. No." refer to the docket in this case, case number 12-40279 unless otherwise noted.

$72,223.86. The order awarding fees to the Receiver was entered on August 24, 2015. (Order, ECF Doc. No. 207.)

On September 3, 2015, the Receiver filed a motion seeking allowance of attorney's fees incurred in the bankruptcy case in the amount of $355,953.25 (the "Fee Application"). (Application for Compensation, ECF Doc. No. 209.) On October 9, 2015, the Debtor filed an objection to the Fee Application (the "Fee Objection"). (Objection to Professional Fees, ECF Doc. No. 222.) On October 19, 2015, the Receiver filed a reply to the Fee Objection (the "Reply Brief"). (Brief, ECF Doc. No. 224.) On October 21, 2015, the Debtor filed a reply to the Reply Brief. (Reply, ECF Doc. No. 228.) A hearing was held on October 21, 2015 on the Fee Application and the Court reserved decision.

DISCUSSION

The fees requested in the Fee Application are for services rendered by the Receiver's counsel, Tenebaum Berger & Shivers, LLP, to the Receiver in this case. The vast majority of these fees relate to the defense of the Proof of Claim and to defense of the Debtor's application to surcharge the Receiver. The Proof of Claim was substantially allowed, and the Debtor's motion to surcharge the Receiver was denied except for $225.49. See In re 29 Brooklyn Ave., LLC, 535 B.R. 36 (Bankr. E.D.N.Y. 2015). Whether the Fee Application can be granted depends on whether the services rendered are compensable under the Bankruptcy Code and whether the amounts requested are reasonable.

A.    Compensable Services

The Bankruptcy Code prescribes a receiver's responsibilities and duties following commencement of bankruptcy case involving property the receiver is administering. The Bankruptcy Code defines a receiver as a "custodian." 11 U.S.C. § 101(11). Section 543 governs what a custodian must do when the custodian learns of the bankruptcy. First, the custodian must

3

cease all administration activities and cannot make any disbursements from property of the debtor except when such action would be necessary to preserve property in the custodian's control. 11 U.S.C. § 543(a); <u>see, e.g.</u>, <u>S.E.C. v. Churchill Securities, Inc.</u>, 223 B.R. 415, 417-18 (S.D.N.Y. 1998). Second, the custodian must perform two duties: (1) turn over all property of the debtor in the custodian's control to the trustee (or debtor in possession), and (2) file an accounting of any property of the debtor that came into the possession, custody, or control of the custodian.[5] 11 U.S.C. § 543(b); <u>see e.g.</u>, <u>In re 245 Associates, LLC</u>, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995), <u>corrected</u> (Nov. 9, 1995).

Custodians are also entitled to be reimbursed for their expenses and to receive compensation for their services from the bankruptcy estate. Section 543(c)(2) states that the court "shall . . . provide for payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian." 11 U.S.C. § 543(c)(2). This compensation is entitled to administrative priority under § 503(b)(3)(E), which provides for an allowed administrative expense for "the actual, necessary expenses . . . incurred by . . . a custodian superseded under § 543 of this title, and compensation for the services of such custodian." 11 U.S.C. § 503(b)(3)(E).

This section of the Bankruptcy Code codifies previous common law regarding the compensation of custodians. In <u>Randolph & Randolph v. Scruggs</u>, 190 U.S. 533, 23 S. Ct. 710, 47 L. Ed. 1165 (1903), the Supreme Court held that a pre-petition custodian could seek compensation as an administrative expense for services that benefitted the estate. <u>Id.</u> at 538-39. The legislative history shows that § 503(b)(3)(E) was specifically designed to codify the rule articulated in <u>Randolph</u>. 128 Cong. Rec. 32398 (1978) (statement of Rep. Edwards) ("Section 503(b)(3)(E)

---

[5] A court may, after notice and a hearing, excuse the custodian from these duties and continue the custodian in possession during the bankruptcy. 11 U.S.C. § 543(d). No motion to continue the Receiver in possession of the Property or to excuse the Receiver from filing an accounting was made in this case.

codifies present law in cases such as <u>Randolph v. Scruggs</u>, 190 U.S. 533, which accords administrative expense status to services rendered by a prepetition custodian or other party to the extent such services actually benefit the estate.") Under the Bankruptcy Code and under pre-Code law, the custodian's services must provide a benefit to the estate to be entitled to administrative expense priority. <u>See</u> <u>Szwak v. Earwood (In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.)</u>, 592 F.3d 664, 674 (5th Cir. 2009) (collecting cases).

In addition to the expenses and compensation that may be awarded to a custodian under § 503(b)(3)(E), § 503(b) also allows compensation for a custodian's attorney. Section 503(b)(4) grants an allowed administrative expense for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection." 11 U.S.C. § 503(b)(4).

The general rule with regard to payment of attorneys' fees is the American Rule, under which each party is responsible for payment of its own attorney's fees. <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L. Ed. 2d 141 (1975). Responsibility for fees may be shifted to another party only where a statue or contract provides for such shifting. <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 253, 130 S. Ct. 2149, 2157, 176 L. Ed. 2d 998 (2010). Section 503(b)(4) is unquestionably a fee-shifting statute; it provides for the bankruptcy estate to pay "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection," which includes a superseded custodian, such as the Receiver. 11 U.S.C. § 503(b)(4). The attorney's fees requested by the Receiver's counsel can be allowed to the extent they fall within the ambit of § 503(b)(4).

There is no question that the Receiver's counsel is entitled to fees under § 503(b)(4) for services directly related to the process of turning over property of the estate in the Receiver's control and providing the required accounting. The plain language of § 503(b)(4) provides for compensation for services rendered by an attorney of an entity with an allowed expense under § 503(b)(3)(E). 11 U.S.C. § 503(b)(4). Further, "the Bankruptcy Code contemplates that additional legal services will be incurred in preparing the custodian's application for payment. . . ." In re Snergy Properties, Inc., 130 B.R. 700, 705 (Bankr. S.D.N.Y. 1991); see also 245 Associates, 188 B.R. at 748 (holding that a receiver is entitled to costs and compensation for "winding up" duties); In re Posada Associates, 127 B.R. 278, 281 (Bankr. D.N.M. 1991) (holding that a superseded custodian may recover compensation and costs under § 503(b)(3)(E) and § 503(b)(4) for performing duties required by the Bankruptcy Code). It is not necessary for a receiver to obtain approval for retention of counsel from the bankruptcy court as a prerequisite to seeking a fee award under § 503(d)(4). See 245 Associates, 188 B.R. at 748, Snergy, 130 B.R. at 705, Posada, 127 B.R. at 281-82. At issue here is whether § 503(b)(4) allows for fees incurred in defending the Receiver's application for compensation under § 503(b)(3)(E).

1.  Baker Botts L.L.P. v. ASARCO LLC

The Supreme Court recently decided that attorneys retained pursuant to § 327(a) by a trustee or debtor in possession are not entitled to compensation as an administrative expense for attorney's fees incurred in defending a fee application, at least where the fee objection is interposed by a representative of the bankruptcy estate. Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 192 L. Ed. 208 (2015). In that case, Baker Botts L.L.P. ("Baker Botts") represented the debtor, ASARCO LLC ("ASARCO"), in a chapter 11 bankruptcy case. Id. at 2163. Baker Botts successfully prosecuted fraudulent transfer claims against ASARCO's parent company and recovered a significant judgment for the debtor. Id. Baker Botts then sought compensation for its

services under § 330(a). Id. ASARCO, which was now back under the control of its parent company, objected to the fees. Id. The bankruptcy court overruled the objection and awarded Baker Botts its fees, including an additional $5 million for the time spent defending the objection to its fee application. Id. The district court affirmed the award, but the Fifth Circuit reversed it. Id. The Supreme Court granted certiorari and affirmed the Fifth Circuit. Id.

Section 330(a), which provides for the compensation of professionals retained by the bankruptcy estate, permits "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1). Parties in favor of allowing compensation for fee-defense litigation argued that such litigation was part of the services rendered to the estate because the estate benefits from obtaining a judicial determination of the amount of compensation owed to a professional. ASARCO, 135 S. Ct. at 2166. They also argued that fee-defense litigation is compensable because it is inextricably tied to the preparation of a fee application, which is compensable under the Bankruptcy Code. Id. at 2167. The Court rejected these arguments, holding that "reasonable compensation for services rendered" requires "loyal and disinterested service in the interest of a client." Id. at 2165-67 The Court further noted that treating fee-defense litigation as a service to the estate would allow compensation for *unsuccessful* efforts to defend a fee application. Id. at 2166. The Court found this to be "an unnatural interpretation of the term 'services rendered'" and "a particularly unusual deviation from the America Rule," unsupported by the statute. Id.

Parties in favor of allowing compensation for fee-defense litigation also argued that while it might not be a "service" to the estate, fee-defense litigation could properly be viewed as part and parcel of the entire service of representing a client in a bankruptcy proceeding, because not allowing such fees to be paid under § 330(a)(1) would dilute the compensation below the level of "reasonable compensation" provided by the statute. Id. at 2166-67. The Court rejected this

argument as well, holding that it was not compatible with the statutory language. Id. at 2168 (quoting Alyeska Pipeline, 421 U.S. at 260).

The instant case, however, is distinguishable from ASARCO. The outcome in that case hinged on the Court's interpretation of the word "services." Litigating against one's own client did not fall within the Court's view of what constitutes "actual, necessary services rendered" under § 330(a). ASARCO, 135 S. Ct. at 2165 ("Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as 'labor performed for' – let alone 'disinterested service to' – that administrator."); 11 U.S.C. § 330(a)(1)(A). But in this case, the legal services in question were rendered to the client. The work performed by the Receiver's counsel in litigating the fee application was "labor performed for" and "disinterested service" to the Receiver. See ASARCO, 135 S. Ct. at 2165.

In addition, the applicable fee-shifting statute in this case is § 503(b)(4), not § 330(a). Section 503(b)(4) differs from § 330(a) in that it only allows compensation for the attorney of an entity whose expense is *allowable* under § 503(b)(3)(A)-(E). 11 U.S.C. § 530(b)(4) This removes the risk that, as the ASARCO Court feared, an attorney might receive a fee award for unsuccessfully defending an application for compensation. See Id. at 2166 ("We decline to adopt a reading of § 330(a)(1) that would allow courts to pay professionals for arguing for fees they were found never to have been entitled to in the first place."). The requirement that the attorney seeking fees under § 503(b)(4) represent an entity whose expense is allowable also underscores that § 503(b)(4) constitutes an explicit fee shifting statute under the standard articulated in ASARCO. Section 503(b)(4) specifically provides for attorney's fees for the "prevailing party" – in this case, an entity whose expenses have been determined to be allowable under § 503(b)(3)(A)-(E). See Id. at 2164 (noting that fee-shifting statutes usually authorize award of reasonable attorney's fee to a

prevailing party in an adversarial action). In this case, the Receiver engaged in extensive litigation with the Debtor over his expenses and compensation and prevailed. Under § 503(b)(4), his counsel is entitled to reasonable compensation for services rendered to the Receiver in the case, and the holding of ASARCO does not require a different result.

It should be noted that, in this case, a chapter 11 plan was confirmed that paid all creditors 100% of their claims. The only expense left unpaid at the time of the litigation was the Receiver's claim. As the Debtor in this case was a single-member LLC, with Mr. Barron as the sole equity holder, any reduction in the Receiver's claim would benefit Mr. Barron and Mr. Barron alone. In essence, the Receiver was not litigating with the Debtor, but with Mr. Barron, the Debtor's equity holder, who would be the beneficiary of any reduction in the Receiver's claim or any surcharge of the Receiver. Neither the Debtor's estate nor the creditors of the Debtor would be prejudiced by an award of fees in this case. As a result, this situation does not implicate the fiduciary concerns outlined by the Supreme Court in ASARCO.

2. In re Wind N' Wave

The case of In re Wind N' Wave, 509 F.3d 938 (9th Cir. 2007) provides a framework for evaluating a request under § 503(b)(4) for attorneys' fees incurred in defending an application for compensation under § 503(b)(3). In Wind N' Wave, a group of petitioning creditors sought attorneys' fees under § 503(b)(4) for fees incurred in appealing a denial of fees by the bankruptcy court, which they sought for prosecuting the petition pursuant to § 503(b)(3)(A). In re Wind N' Wave, 509 F.3d 938, 940 (9th Cir. 2007). The Bankruptcy Appellate Panel ultimately denied the request for fees under § 503(b)(4). Id. The Ninth Circuit reversed, holding that the creditors could seek additional compensation in the bankruptcy court under § 503(b)(4) for fees incurred in litigating their prior request for compensation under § 503(b)(3)(A) and § 503(b)(4). Id. at 940-41. The Ninth Circuit had previously held in In re Smith, 317 F.3d 918 (9th Cir. 2002), that fees

incurred litigating an application for compensation could be awarded under § 330(a)(1) if the services otherwise meet the requirements of § 330(a), and the case "exemplifies a set of circumstances where litigation was necessary." Wind N' Wave, 509 F.3d at 943 (quoting In re Smith, 317 F.3d 918, 928 (9th Cir. 2002)) (internal quotations omitted). The use of the word "necessary" in this context tracks the language of § 330(a)(1) which allows "reasonable compensation for actual, *necessary* services rendered. . . ." 11 U.S.C. § 330(a)(1)(A) (emphasis added). The Ninth Circuit held that the nearly identical language in § 330(a) and § 503(b)(4) mandated a similar approach for fees incurred by an attorney representing an entity with an allowable claim under § 503(b)(3)(A)-(E). Wind N' Wave, 509 F.3d at 944-46. Under Wind N' Wave and Smith, the set of circumstances indicating that such services are "necessary" include, that the prosecution or defense of the fee application was successful; that the objections to the fee application were meritless; that the litigation is not pursued simply to increase legal fees; and that the expenses incurred are unavoidable. Id. at 946; Smith, 317 F.3d at 929. In the context of an application for fees under § 503(b)(4), the logic of these cases is persuasive.

Here, the circumstances of this case show the litigation was necessary. First, the Receiver substantially prevailed in his application for compensation. Second, this Court found that the Debtor's broad-based effort to disallow the Receiver's proof of claim in its entirety based on allegations of mismanagement was "misplaced" and "misunderst[ood] the legal standard." 29 Brooklyn Avenue, 535 B.R. at 59. Third, there is no indication that the Receiver pursued this application simply in an effort to incur fees for his counsel. Rather, this litigation was driven by the objections raised by the Debtor, the vast majority of which were ultimately overruled. See Id. at 59-60. Fourth, the expenses incurred were unavoidable because this litigation "was the only avenue through which [the Receiver] could receive [his] due compensation." Wind N' Wave, 509

F.3d at 946. The Receiver did not ask to be a part of this bankruptcy case. He was appointed pre-petition by the state court to administer a building in foreclosure. Once the bankruptcy was filed, the Receiver turned over the Property, filed his accounting, and made an application for compensation. It was the Debtor that chose to embark on a multi-year effort to disallow an approximately $80,000.00 claim. This litigation strategy pursued by the Debtor, including extensive discovery and an eight-day trial, all over a claim of less than $100,000.00, was the ultimate cause of the fees incurred by the Receiver's counsel. In short, the fees incurred were unavoidable, and the Court finds that this case exemplifies a set of circumstances where the fees incurred by the Receiver's counsel were necessary.

It should be noted that, to the extent that Wind N' Wave and Smith stand for the proposition that fees may be awarded to counsel for a debtor in possession or trustee for defending a fee application against objections interposed by a representative of the bankruptcy estate, they have been overruled by ASARCO. "Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as 'labor performed for' – let alone 'disinterested service to' – that administrator." ASARCO, 135 S. Ct. at 2165. But the two-prong standard articulated in Wind N' Wave and Smith remains applicable in other contexts. Under that standard, not only must the fees sought be "necessary," they must, as a threshold matter, be compensable under the relevant fee-shifting provision, whether it is § 330(a)(1) or § 503(b)(4). Wind N' Wave, 509 F.3d at 943-45. In light of ASARCO, fees incurred by debtor's counsel in defending a fee application against objections by the bankruptcy estate would not be allowable under the standard laid out in Wind N' Wave or Smith because such fees are not compensable under § 330(a)(1). Here, however, the fee shifting statue at issue here is § 503(b)(4), not § 330(a)(1). Moreover, the fees in question were incurred by counsel for the Receiver in litigation on behalf of, not against,

its client. The Debtor argues that <u>ASARCO</u> forecloses all recovery of fees for defending a fee application under § 330(a)(1), and, by extension, precludes recovery by the Receiver's counsel of its fees defending the Receiver's fee application. (Obj. to Professional Fees ¶ 24, ECF Doc. No. 222 (hereinafter "Debtor's Obj.").) This argument, however, misreads the holding of <u>ASARCO</u>. The Supreme Court did not hold that legal fees incurred in defending a fee application are *per se* unrecoverable. Rather, the Court recognized that § 330(a)(1) is a fee shifting statute, but found that the fees sought in that case fell outside the ambit of the statute. <u>ASARCO</u>, 135 S. Ct. at 2165. Here, the application of a different fee shifting statute to different facts leads to a different result.

### 3. <u>Other Cases</u>

Other cases addressing attorneys' fees sought by a superseded custodian are either inapplicable or distinguishable from the instant case. In <u>Snergy</u>, the debtor in possession challenged a fee application filed by a pre-petition receiver that included attorneys' fees. <u>In re Snergy Properties, Inc.</u>, 130 B.R. 700, 702 (Bankr. S.D.N.Y. 1991). The court found that the receiver's counsel was entitled to recover post-petition legal expenses that satisfied the requirements of § 503(b)(4), including compensation to the receiver's attorney for preparing the application for compensation. <u>Id.</u> at 705. The receiver in that case did not request counsel fees for defending his fee application, so that issue was not addressed.

In <u>Posadas</u>, the debtor and a secured creditor objected to a pre-petition receiver's application for attorneys' fees. <u>In re Posadas Associates</u>, 127 B.R. 278, 278 (Bankr. D.N.M. 1991). The court held that the receiver was not entitled to compensation under § 503(b) because the receiver had obtained authorization from the bankruptcy court, pursuant to § 543(d), to remain in possession of the property. <u>Id.</u> at 281. "Once excused from compliance and allowed to remain in possession, a custodian is in the same fiduciary capacity as a trustee or a debtor in possession . . . ." <u>Id.</u> Thus, the receiver in that case was required to seek authorization pursuant to § 327(a) to employ

counsel that could be compensated from the bankruptcy estate. Id.; see also In re 245 Associates, LLC, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1995) (holding that a receiver continued in possession under § 543(d) must comply with § 327(a) to retain counsel); In re American Motor Club, Inc., 125 B.R. 79, 82 (Bankr. E.D.N.Y. 1991) (holding that no administrative claim may be recovered under § 503(b)(3)(E) where a receivership was terminated pre-petition).

In Bodenheimer, a superseded custodian appointed pre-petition under state law as a liquidator for a law firm in bankruptcy filed an application to recover his fees, including compensation to the custodian, out of pocket expenses, and attorneys' fees. Szwak v. Earwood (In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.), 592 F.3d 664, 666-67 (5th Cir. 2009). The bankruptcy court awarded the fees and the district court affirmed. Id. at 667-68. The Fifth Circuit reversed, holding that the lower courts had failed to apply the proper standard by not considering whether the receiver's services benefitted the estate. Id. at 672-74. The court noted that § 503(b)(3)(E) only allows for actual, necessary expenses incurred by a superseded custodian to be accorded administrative priority. Id. at 674. The court found that, rather than performing his obligations under § 543(b) to turn over possession and file an accounting, the custodian "focused his efforts on opposing the bankruptcy." Id. at 671. All of the custodian's legal fees, which were over half of the compensation requested, were incurred in efforts to oppose the bankruptcy. Id. Such actions did not benefit the estate and certainly were not necessary to preserve estate property. Id. at 672. As a result, they were not compensable under § 543(c)(2). Id. The court further held that the fees could not be allowed under § 503(b)(4) because they were not a derivative of an allowable expense under § 530(b)(3)(E). Id.

Similarly, in In re N. Port Dev. Co., 36 B.R. 19 (Bankr. E.D. Mo. 1983), a pre-petition receiver filed a motion for payment of fees, including attorneys' fees. N. Port Dev. Co., 36 B.R.

at 19-20. The court considered the application and held that the receiver's attorney would not be allowed fees for time spent opposing the bankruptcy or prosecuting the fee application. Id. 21-22; see also In re Kenval Marketing Corp., 84 B.R. 32, 35 (Bankr. E.D. Pa. 1988) (holding that counsel for prepetition assignee could not recover legal fees for opposing involuntary bankruptcy).

In this case, the majority of the fees sought by the instant application were incurred in defending the Receiver's application for compensation under § 503(b)(3)(E). Unlike the custodians in Bodenheimer, N. Point Dev., and Kenval Marketing, the Receiver did not incur substantial legal fees opposing the bankruptcy.[6] Unlike the custodians in Posadas, 245 Associates, and American Motor Club, the Receiver was superseded under § 543 in this case. Moreover, unlike in those cases, the Receiver was found to have an allowable expense under § 503(b)(3)(E), which is a prerequisite to an award of counsel fees under § 503(b)(4). The Receiver's counsel performed loyal and disinterested service on behalf of its client, thus satisfying the Supreme Court's test for "services rendered" under Baker Botts. Applying the Ninth Circuit's analysis under Wind N' Wave, this Court finds that this exemplifies a case where the litigation was necessary. The Debtor initiated and pursued this litigation, forcing the Receiver to incur the fees to receive his due compensation. The Receiver was successful against the Debtor, and there is no indication that the Receiver or his counsel engaged in the litigation merely to increase legal fees.

4.  Benefit to the Estate

A custodian's actions must result in a benefit to the estate to be accorded administrative priority under § 503(b)(3)(E). See Randolph, 190 U.S. at 538-39; Bodenheimer, 592 F.3d at 674 (collecting cases). This Court applied this standard in evaluating the Receiver's claim under

---

[6] The Court previously disallowed $1,232.50 in fees sought by the Receiver in his Proof of Claim for fees incurred defending a state court action where the Debtor was seeking to remove the Receiver. See 29 Brooklyn Ave., 535 B.R. at 57. An additional $750.00 sought in the Fee Application has been disallowed for the same reason. See infra Section B.1.

14

§ 503(b)(3)(E). See 29 Brooklyn Ave., 535 B.R. at 42. The Debtor argues that the fees sought by the Receiver's counsel here must be denied because they did not provide a benefit to the estate. (Debtor's Obj. ¶¶ 5-11, ECF Doc. No. 222.)

This argument is misplaced. First, the fees sought by the Receiver's counsel fall under § 503(b)(4), not § 503(b)(3). Section 503(b)(4) provides for "reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable under" § 503(b)(3)(A)-(E). 11 U.S.C. § 503(b)(4). The Receiver's claim under § 503(b)(3)(E) was allowed because the expenses and services for which the Receiver sought compensation provided a benefit to the estate. 29 Brooklyn Ave., 535 B.R. at 42. The Receiver purchased oil for the Property, engaged a management company to handle the day-to-day administration of the Property, and incurred legal fees in Landlord-Tenant court seeking to collect rents due from tenants of the Property, among other expenses. Id. at 45-58. These services helped preserve the Property and provided a benefit to the estate, and therefore, the Receiver's request for compensation was allowed under § 503(b)(3)(E). This provides the basis for allowing the Receiver's counsel's request for compensation under § 503(b)(4).

In its objection, the Debtor points to attorneys' fees included in the Receiver's Proof of Claim that this Court disallowed in the previous decision. (Debtor's Obj. ¶ 6.) In 29 Brooklyn Ave., the Court disallowed fees in the amount of $1,232.50 incurred post-petition by the Receiver's counsel "defending the Debtor's efforts in state court to remove the Receiver from possession of the Property." 29 Brooklyn Ave., 535 B.R. at 57. These fees provided no benefit to the estate, and the legal work for which compensation was sought was at odds with the Receiver's duties under § 543(b). Id. Courts have consistently held that a Receiver cannot recover fees for efforts to oppose a bankruptcy, including resisting the turnover of property of the estate as required by § 543(b). See

Bodenheimer, 592 F.3d at 672; Kenval Marketing, 84 B.R. at 35; N. Port Dev. Co., 36 B.R. at 21-22. The fees sought in the instant application, however, are different. This Court has already found that the services performed by the Receiver provided a benefit to the estate. The Receiver has been found to be entitled to his actual, necessary expenses and compensation for his services pursuant to § 503(b)(3)(E) and § 543(c). The actions of the Debtor made litigation "the only avenue through which [the Receiver] could receive [his] due compensation." Wind N' Wave, 509 F.3d at 946. As noted above, this case exemplifies a set of circumstances where the litigation was necessary. Therefore, since the Receiver's underlying services provided a benefit to the estate, and the fees incurred defending the proof of claim were necessary in this case, those fees are allowable under § 503(b)(4).

B.      Reasonableness

        In addition to determining whether the requested fees are compensable, the Court is also required to determine whether the fees are reasonable. The standards for reasonableness under § 503(b)(4) are "the time, the nature, the extent, and the value of such services, and the cost of comparable services under this title." 11 U.S.C. § 503(b)(4). These factors mirror the factors considered to determine reasonable compensation under § 330(a)(3), and courts generally apply the same analysis and approach to fee requests under § 503(b)(4) that are used for fee applications under § 330(a). In re Bayou Group, LLC, 431 B.R. 549, 566 (Bankr. S.D.N.Y. 2010). A party making an application for fees under § 330 bears the burden of establishing the reasonableness of the fees. In re Quigley Co., Inc., 500 B.R. 347, 356 (Bankr. S.D.N.Y. 2013). To meet that burden, the party must submit sufficiently detailed time records such that the court can determine whether all the fees requested are reasonable. Id. 356-57. The court applies an objective standard when determining reasonableness and does not judge the fee application through hindsight. Id. at 357.

In addition to these legal standards, General Order 613 of June 4, 2013 imposes additional requirements for fee applications in the United States Bankruptcy Court for the Eastern District of New York. Specifically, fee applications should be supported by time sheets breaking down all services provided by project categories with a narrative summary for each entry. Gen. Order 613 § A.4. Time entries must be kept separately for each task and may not be combined or "lumped" together unless they amount to a de minimis amount of time. Id. Time entries for communications (e.g., telephone calls, emails, etc.) should identify both the parties and the nature of the communication. Id. Vague entries and excessive lumping may be grounds for a reduction in the fees awarded. See Quigley Co., 500 B.R. at 363-64.

    1.   The time, nature, extent, and the value of the services

The total amount requested in the Fee Application is $355,953.25 for 1,273.77 hours. The Fee Application was accompanied by time records from the Receiver's counsel. Many entries, however, contain descriptions that are too vague for the Court to properly ascertain what services were performed. Many entries also consist of lumped services making it impossible for the Court to properly allocate the time spent on the listed services. A total of 310.05 hours billed by Michael Cohen, Esq., 1.50 hours billed by Hattie Ragone, Esq., 2.00 hours billed by Rebecca A. Crance, Esq., 42.92 hours billed by Eytan Goldshein, Esq., and 22.30 hours billed by a paralegal[7] are either too vague or contained lumped services. These services total $107,067.00.[8] As the Court cannot accurately assess the reasonableness of these entries, the total fees for this time shall be reduced

---

[7] It is unclear from the Fee Application who "MS" is. However, examining the totals show that the time attributed to "MS" was billed at the stated paralegal rate in the Fee Application.

[8] Mr. Cohen: 310.05 hours at $300.00 per hour equals $93,015.00.
Ms. Ragone: 1.50 hours at $300.00 per hour equals $450.00.
Ms Crance: 2.00 hours at $300.00 per hour equals $600.00.
Mr. Goldshein: 42.92 hours at $225.00 per hour equals $9,657.00.
Paralegal: 22.30 hours at $150.00 per hour equals $3,345.00.

by 50% and rounded down to $50,000.00.[9] See Quigley, 500 B.R. at 364-65 (reducing services billed with vague descriptions by 50%).

In addition to the vague and lumped entries, the Fee Application includes 237.85 hours billed by Mr. Cohen for "digesting of hearing," "digesting of transcript," and "draft of post-trial brief." This yields a total of $71,355.00 at Mr. Cohen's billed rate of $300.00 per hour. "Digesting of transcript" and "digesting of hearing" are services more properly allocated to a paralegal or junior associate, not a senior associate such as Mr. Cohen. Compensation sought for Mr. Cohen's time performing this type of work is excessive based on the time nature, extent, and value of the services. However, due to the lumping of these entries with Mr. Cohen's work on the post-trial brief, the Court cannot properly allocate the time between the services. Accordingly, the total fees for this time shall be reduced by 50% and rounded down to $35,000.00.

The Fee Application also indicates that three attorneys attended the August 7, 2013 hearing held in this case. Nothing in the Fee Application indicates why three attorneys were necessary at that hearing. Therefore, the Court will only allow fees for this hearing for the time of David Berger, Esq., in the amount of $1,050.00 (3.00 hours at $350.00 per hour). The fees will be reduced by $900.00 for Mr. Cohen's time and $675.00 for Mr. Goldshein's time.

Also, it appears that 2.50 hours billed by Mr. Cohen on April 8, 2014 for an appearance in state court in the pre-petition foreclosure action relates to efforts to defend against the Debtor's attempts to remove the Receiver. As a result, the Court will reduce the fees by an additional $750.00.

After taking these reductions into account, the counsel fees to be awarded are $260,206.25. The Receiver's final allowed claim for compensation and expenses was approximately 10% less

---

[9] See Schedule A, attached hereto, for a full list of the time entries in question.

than the original amount requested. Therefore, the Court will reduce the final award of counsel fees by $26,000.00, approximately 10% of the remaining award, for a total of $234,206.25. See Quigley, 500 B.R. at 370-71 (reducing fees awarded for fee-defense litigation by percentage of fees disallowed by court.)

    2.  <u>Cost of comparable services</u>

The primary consideration here is whether the rates charged for the services are reasonable. To determine whether a rate is reasonable, courts look to the prevailing hourly rates in the district where the court sits. <u>Polk v. N.Y. State Dep't of Corr. Servs.</u>, 722 F.2d 23, 25 (2d Cir.1983). The blended rate for all the fees requested in the Fee Application is $279.45 per hour, and the highest rate charged in the Fee Application is $350.00 per hour. These rates are reasonable, as they are similar to or less than the rates normally charged in courts within this district. <u>See</u> <u>In re Nicholas</u>, 496 B.R. 69, 75 (Bankr. E.D.N.Y. 2011) (holding that blended rate of $414.00 per hour was reasonable).

The Fee Application requested a total of $355,953.25 in fees for 1,273.77 hours. After applying the reductions outlined above, the Court finds that compensation in the amount of $234,206.25 for 1,265.27 hours is reasonable under the circumstances of this case. The Fee Application also requests $6,803.77 in expenses. The attached receipts, however, only substantiate $5,533.30 in expenses. Therefore, the Court grants the Fee Application in the amount of $234,206.25 plus actual and necessary expenses of $5,533.30.

CONCLUSION

The Fee Application is granted to the extent stated above. All other relief is denied. A separate order will issue.



Dated: Brooklyn, New York
April 27, 2016

Carla E. Craig
United States Bankruptcy Judge

# **<u>Schedule A</u>**

| List of Vague and Lumped Time Entries by Michael Cohen | |
|---|---|
| Date | Hours |
| 1/29/2013 | 2.20 |
| 2/4/2013 | 1.30 |
| 2/6/2013 | 0.50 |
| 2/13/2013 | 0.20 |
| 2/28/2013 | 0.80 |
| 3/6/2013 | 0.50 |
| 3/7/2013 | 2.10 |
| 3/8/2013 | 1.00 |
| 3/11/2013 | 2.30 |
| 3/13/2013 | 2.50 |
| 3/17/2013 | 0.40 |
| 3/18/2013 | 0.20 |
| 3/20/2013 | 1.50 |
| 3/24/2013 | 0.40 |
| 3/28/2013 | 0.20 |
| 4/3/2013 | 0.50 |
| 4/18/2013 | 1.10 |
| 4/19/2013 | 0.30 |
| 4/23/2013 | 0.50 |
| 4/25/2013 | 1.30 |
| 5/1/2013 | 0.70 |
| 7/11/2013 | 0.20 |
| 7/15/2013 | 2.00 |
| 7/25/2013 | 4.00 |
| 8/1/2013 | 1.90 |
| 8/2/2013 | 0.20 |
| 8/8/2013 | 3.00 |
| 8/29/2013 | 2.25 |
| 9/11/2013 | 2.50 |
| 9/13/2013 | 2.30 |
| 9/17/2013 | 2.70 |
| 10/15/2013 | 1.60 |
| 10/17/2013 | 2.00 |
| 10/17/2013 | 0.40 |
| 10/21/2013 | 1.50 |
| 10/30/2013 | 1.20 |
| 11/1/2013 | 1.00 |
| 12/2/2013 | 1.70 |
| 12/3/2013 | 3.20 |
| 12/17/2013 | 0.70 |
| 1/2/2014 | 0.60 |
| 1/3/2014 | 0.50 |
| 1/7/2014 | 1.80 |
| 1/28/2014 | 2.50 |
| 1/29/2014 | 0.70 |
| 2/3/2014 | 1.70 |

| Date | Value |
|---|---|
| 2/4/2014 | 2.20 |
| 2/5/2014 | 2.20 |
| 2/6/2014 | 0.30 |
| 2/10/2014 | 1.40 |
| 2/12/2014 | 0.60 |
| 3/4/2014 | 1.00 |
| 3/5/2014 | 3.50 |
| 3/7/2014 | 0.20 |
| 3/11/2014 | 0.50 |
| 3/14/2014 | 1.00 |
| 3/19/2014 | 5.80 |
| 3/20/2014 | 0.60 |
| 3/21/2014 | 0.60 |
| 3/27/2014 | 2.00 |
| 3/28/2014 | 1.70 |
| 3/31/2014 | 1.50 |
| 4/1/2014 | 1.80 |
| 4/2/2014 | 4.70 |
| 4/3/2014 | 2.00 |
| 4/4/2014 | 1.40 |
| 4/7/2014 | 6.30 |
| 4/8/2014 | 4.50 |
| 4/8/2014 | 9.00 |
| 4/8/2014 | 1.60 |
| 4/9/2014 | 6.60 |
| 4/10/2014 | 1.30 |
| 4/10/2014 | 8.70 |
| 4/10/2014 | 0.30 |
| 5/1/2014 | 0.20 |
| 5/13/2014 | 0.20 |
| 5/20/2014 | 0.20 |
| 6/9/2014 | 1.30 |
| 6/12/2014 | 1.00 |
| 6/23/2014 | 0.40 |
| 6/26/2014 | 9.00 |
| 6/26/2014 | 2.00 |
| 7/1/2014 | 9.00 |
| 7/1/2014 | 5.00 |
| 7/14/2014 | 5.80 |
| 7/15/2014 | 8.00 |
| 7/16/2014 | 5.80 |
| 7/17/2014 | 5.70 |
| 7/21/2014 | 6.10 |
| 7/22/2014 | 9.00 |
| 7/22/2014 | 3.40 |
| 7/23/2014 | 7.90 |
| 7/24/2014 | 7.50 |
| 7/24/2014 | 3.50 |

| Date | Value |
|---|---|
| 7/27/2014 | 8.80 |
| 7/28/2014 | 9.00 |
| 7/28/2014 | 4.80 |
| 7/29/2014 | 9.00 |
| 7/29/2014 | 3.70 |
| 7/30/2014 | 4.90 |
| 8/4/2014 | 1.50 |
| 8/19/2014 | 0.50 |
| 10/21/2014 | 6.40 |
| 10/22/2014 | 9.40 |
| 10/23/2014 | 9.20 |
| 10/30/2014 | 4.60 |
| 1/22/2015 | 5.80 |
| 2/17/2015 | 0.70 |
| 2/18/2015 | 0.20 |
| 2/23/2015 | 1.90 |
| 2/24/2015 | 1.50 |
| 8/31/2015 | 1.20 |

| List of Additional Vague and Lumped Time Entries | | |
|---|---|---|
| Date | Hours | Billing Professional |
| 10/22/2012 | 1.50 | HR |
| 2/4/2014 | 2.00 | RAC |
| 6/27/2013 | 2.66 | EG |
| 6/27/2013 | 4.38 | EG |
| 6/27/2015 | 0.98 | EG |
| 2/11/2014 | 2.50 | EG |
| 2/18/2014 | 2.00 | EG |
| 3/5/2014 | 3.40 | EG |
| 3/10/2014 | 3.20 | EG |
| 3/18/2014 | 2.40 | EG |
| 3/19/2014 | 3.70 | EG |
| 3/25/2014 | 2.30 | EG |
| 3/27/2014 | 2.70 | EG |
| 3/31/2014 | 2.40 | EG |
| 4/1/2014 | 2.90 | EG |
| 4/2/2014 | 3.60 | EG |
| 4/8/2014 | 2.50 | EG |
| 4/10/2014 | 1.30 | EG |
| 1/7/2013 | 4.50 | MS |
| 1/14/2013 | 2.20 | MS |
| 1/22/2013 | 2.80 | MS |
| 1/23/2013 | 1.20 | MS |
| 1/25/2013 | 4.50 | MS |
| 1/28/2013 | 0.80 | MS |
| 1/31/2013 | 1.50 | MS |
| 2/6/2013 | 2.70 | MS |
| 2/11/2013 | 1.30 | MS |
| 2/19/2013 | 0.80 | MS |